Brent Caslin (Cal. Bar No. 198682)
bcaslin@jenner.com
Kelly M. Morrison (Cal. Bar No. 255513)
kmorrison@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071-2054
Phone:      (213) 239-5100
Facsimile: (213) 239-5199

Attorneys for Defendant A-T Solutions, Inc.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGAN HALLIWELL and AARON SLEICHTER,<br><br>                    Plaintiffs,<br><br>        v.<br><br>A-T SOLUTIONS, INC.,<br><br>                    Defendant. | Case No. 13-CV-2014-H-KSC<br><br>The Honorable Marilyn L. Huff<br><br>**A-T SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION REQUESTING IN CAMERA REVIEW OF CLASSIFIED EVIDENCE**<br><br>[Supporting Declaration of Jeffrey A. Atteberry filed concurrently]<br><br>Date: September 8, 2014<br>Time: 10:30 a.m.<br>Courtroom: 15A<br><br>Complaint Filed: August 29, 2013 |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 1

I. A-T Solutions Needs Classified and Official Information To Defend Itself. ...................................................................... 1

II. The Disclosure of Classified and Official Information Must Be Authorized in Advance. ............................................... 3

A. Federal law prohibits the disclosure of classified information. ............................................................ 3

B. The DOD prohibits unauthorized use of Official Information in litigation. ......................................... 5

III. A-T Solutions Continues to Seek DOD Approval. ..................... 6

IV. The Plaintiffs Continue to Disregard the Sensitive Issues Raised by the Use of Classified and Official Information in this Case. ............... 8

ARGUMENT .................................................................................................. 11

I. The Plaintiffs' Proposal Is Legally Impermissible. .......................... 11

II. The Plaintiffs' Proposal Is Practically Unworkable. ........................ 13

III. The Plaintiffs' Proposal Is Really An Improperly Disguised Motion for Reconsideration. .................................................. 15

CONCLUSION ............................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bareford v. General Dynamics* Corp.,
    973 F.2d 1138 (5th Cir. 1992) ...................................................................... 7

*Gomez v. Gates (In re Boeh)*,
    25 F.3d 761 (9th Cir. 1994) ............................................................... 8, 14, 15

*Gutierrez v. Givens*,
    989 F. Supp. 1033 (S.D. Cal. 1998) ............................................................. 19

*Haller v. Robbins*,
    409 F.2d 857 (1st Cir. 1969) ......................................................................... 18

*In re September 11 Litigation*,
    567 F. Supp. 2d 611 (S.D.N.Y. 2008) ............................................................ 7

*Killian v. Panetta*,
    No. 12-828, 2013 WL 4118399 (S.D. Cal. Aug. 13, 2013) ............................ 19

*Shields v. Shetler*,
    120 F.R.D. 123 (D. Colo. 1988) .................................................................... 19

*United States ex rel. Touhy v. Ragen*,
    340 U.S. 462 (1951) ......................................................................................... 8

*United States v. Earley*,
    746 F.2d 412 (8th Cir. 1984) .................................................................. 18, 19

*Zoltek v. United States*,
    61 Fed. Cl. 12 (Fed. Cl. 2004) ....................................................................... 7

STATUTES

5 U.S.C. § 301 ........................................................................................................ 8

18 U.S.C. § 793 ...................................................................................................... 7

S.D. Cal. Civil Local Rule 7.1 ............................................................................ 19

OTHER AUTHORITIES

32 C.F.R. 97.1 ........................................................................................................ 8

32 C.F.R. 97.3 ............................................................................................... 13

32 C.F.R. 516 *et seq* ............................................................... 8, 13, 14, 15

32 C.F.R. 725 *et seq.* ............................................................. 8, 13, 14, 15

Exec. Order No. 13292, Introductory Statement,
    68 Fed. Reg. 15,315 (Mar. 25, 2003) ............................................... 6, 7

# INTRODUCTION

The plaintiffs misunderstand the nature of the obstacles that must be cleared before classified or official government information can be used or disclosed in this case. Their most recent proposal to have protected information reviewed by the District Court *in camera*, before any use or disclosure has been approved by the government, is legally impermissible, unworkable from a practical perspective, and little more than an improper request that the District Court reconsider its refusal to grant summary judgment for the plaintiffs before A-T Solutions is able to defend itself in this case. The plaintiffs' request for an *in camera* review, which would cover a span of weeks and violate the law, should be denied.

The schedule in the case requires a dramatic extension, or a stay of the entire matter, to allow the parties sufficient time to work with the government to properly address the need to use official and classified government information in this case. The process of engaging the government has been slow, and somewhat frustrating, but it is nevertheless the appropriate process. The process has been authorized by the U.S Supreme Court and, while cumbersome, there is simply no way around it.

# BACKGROUND

## I. A-T Solutions Needs Classified and Official Information To Defend Itself.

Plaintiff Aaron Sleichter is a U.S. Army Special Forces veteran with an inactive Top Secret security clearance and years of experience in special operations training, planning and execution. He earned multiple certifications, six of which were issued by the John F. Kennedy Special Warfare Center. Morrison Decl., Exs. 16-21.[1] These certifications cover a range of areas including foreign language training, interdiction, and advanced urban combat techniques. *Id.*, Exs. 20, 22-23. As a member of the U.S. Army Special Forces, Mr. Sleichter engaged in sophisticated special operations and

---

[1] Rather than burden the Court with duplicate submissions, citations to the Morrison Declaration refer to the Declaration of Kelly M. Morrison in Support of A-T Solutions, Inc.'s Renewed *Ex Parte* motion to Stay Case (ECF No. 44-3), which is scheduled to be heard on the same day as the present Motion.

trained foreign soldiers, including groups as large as 100 at a time.  *Id.*, Ex. 24.  He devised resource allocation plans and participated in the security efforts surrounding President Hamid Karzi in Afghanistan.  *Id.*

The second plaintiff, Logan Halliwell, is a Marine Corps veteran with formal military schooling and an inactive Top Secret security clearance.  Mr. Halliwell earned multiple advanced training certifications from institutions such as the Expeditionary Warfare Training Group, Pacific.  *See, e.g., id.*, Exs. 13-14.  These certifications cover complex military tactics such as reconnaissance and close quarter battle techniques.  *Id.*  Mr. Halliwell served as an "intelligence liaison" in a "direct action" force.  *Id.*, Ex. 15.  After leaving the military, he was employed with another defense contractor performing work similar to that which he performed for A-T Solutions.  *Id.*, Ex. 27.  This former employer, like A-T Solutions, required a security clearance as a condition of employment and classified Mr. Halliwell as an exempt employee in light of the professional nature of his position.  *Id.*, Exs. 25-27.  Mr. Halliwell's former employer also required him to sign a written "Classified Information Nondisclosure Agreement" in which Mr. Halliwell promised "the United States" that he would not disclose classified information encountered during the course of his employment.  *Id.*, Ex. 25; *see also* Atteberry Decl. Ex. 2.[2]

Mr. Sleichter and Mr. Halliwell were employed by A-T Solutions as instructors who lead training for certain elite military personnel.  They received advanced training from the company to improve their teaching skills, and provided specialized classroom and field training to Explosive Ordnance Disposal Technicians and other military professionals.  As a condition of employment, in light of the sensitive nature of their work, both Mr. Halliwell and Mr. Sleichter were required to maintain security clearances.

Long after they left the employment of A-T Solutions, Mr. Halliwell and Mr.

---

[2] Citations to the Atteberry Declaration refer to the concurrently-filed supporting Declaration of Jeffrey A. Atteberry.

Sleichter, through counsel in San Diego, started this case. They allege that they were misclassified as exempt employees but should have been treated as non-exempt employees. Compl. ¶¶ 13, 14. Based on this allegation, the plaintiffs claim they are due overtime wages, penalties, and other amounts. *Id*. ¶ 15. Their demands are not insubstantial.

A-T Solutions bears the burden of proving that Mr. Sleichter and Mr. Halliwell were properly classified as exempt employees under at least one of the exemptions recognized by law. Evidence of the their professional duties and responsibilities while they were instructors for A-T Solutions, in addition to their prior education, training, and work history, will show that they were properly classified as exempt employees under the learned professional and teacher exemptions, among others.

Some of the evidence necessary to establish that the plaintiffs were professional instructors who were properly treated as such will be found in documents, many of which are formal government documents and some of which are classified as Secret or Top Secret. Classified documents are, of course, stored at a secure facility. Much of the sensitive evidence in the case is not in paper form, however, but exists in the knowledge of witnesses and will be obtained through testimony. This testimony will come from the plaintiffs, other A-T Solutions employees, representatives from the Navy and Army, and third party witnesses such as the plaintiffs' former employers, including Blackwater and O'Gara. A good portion –perhaps all – of this information relates to military service and training. A fair amount will be sensitive or classified. Most is "official" Department of Defense information which, as explained below, requires formal approval from the U.S. government before it can be used or disclosed in any manner.

## II. The Disclosure of Classified and Official Information Must Be Authorized in Advance.

### A. Federal law prohibits the disclosure of classified information.

The national defense requires that certain information be maintained in

confidence for the protection of citizens, democratic institutions, homeland security, and relations with foreign nations. Exec. Order No. 13292, Introductory Statement, 68 Fed. Reg. 15,315 (Mar. 25, 2003). Information is "classified" when the relevant government agency "determines [its] unauthorized disclosure . . . reasonably could be expected to result in damage to the national security . . . ." *Id.* § 1.1(a)(1)-(4). Unauthorized disclosure of classified information can result in criminal prosecution. *See Zoltek v. United States*, 61 Fed. Cl. 12, 15 (Fed. Cl. 2004); 18 U.S.C. § 793.

Civil litigation implicating classified information always presents a number of difficult problems. Document production is an obvious problem, as parties in the possession of classified information are required to carefully parse through files to ensure they do not violate federal statutes with the inadvertent unauthorized production of information that the government determines should have been kept secret. And, of course, there are typically controversies regarding how depositions involving sensitive information should be handled and which attorneys should be permitted to attend. *See In re September 11 Litigation*, 567 F. Supp. 2d 611, 616 (S.D.N.Y. 2008) (discussing discovery complications in civil case that implicated classified information). Given these kinds of obstacles, discovery in civil cases that implicate classified information can be lengthy. It is not uncommon for discovery of classified information to take "many years." *See, e.g.*, *id.*

Federal courts have also recognized "the practical reality that in the course of litigation, classified and unclassified information cannot always be separated." *Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1143 (5th Cir. 1992), *vacated in part on other grounds*, No. 91-2432, 1992 U.S. App. LEXIS 25805 (5th Cir. Oct. 14, 1992). Managing such difficulties sometimes requires the court to "restrict the parties' access not only to evidence which itself risks the disclosure of a state secret, but also those pieces of evidence or areas of questioning which press so close upon highly sensitive material that they create a high risk of inadvertent or indirect disclosures." *Id.* at 1143-44. In other words, the management of classified

information is not always a straightforward issue. It is a complex process that requires careful work to manage properly and, in a case such as this one, may involve representatives of multiple agencies and branches of the military.

**B.    The DOD prohibits unauthorized use of Official Information in litigation.**

Given the practical difficulty of drawing the distinction between classified and unclassified information, the Department of Defense has issued regulations governing the "release of official DOD information in litigation and for testimony by DOD personnel as witnesses during litigation." 32 C.F.R. 97.1; *see also United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467 (1951) (holding that administrative agencies have authority under 5 U.S.C. §301 to prescribe regulations controlling the use of information in litigation); *Gomez v. Gates (In re Boeh)*, 25 F.3d 761, 763 (9th Cir. 1994) (upholding equivalent *Touhy* regulations from the U.S. Department of Justice). "Official information" is a much broader category than "classified" information. The term "official information" includes "[a]ll information of any kind … acquired by DOD personnel or its component personnel as part of their official duties or because of their official status within DOD or its components, while such personnel were employed by or on behalf of the DOD or on active duty with the United States Armed Forces." 32 C.F.R. 725.4(e); *see also* 32 C.F.R. 516, app. F (same).

The reach of the official information prohibitions in the CFR is extensive. The regulations require that personnel must not provide "official information, testimony or documents, submit to interview, or permit a view or visit, without . . . authorization . . . ." 32 C.F.R. 725.2(b); *see also* 32 C.F.R. 516.41(a) (equivalent prohibition on Army personnel). The prohibition applies to "[a]ctive duty and former military personnel of the naval service including retirees." 32 C.F.R. 725.4(b) (defining "DON personnel"); *see also* 32 C.F.R. 516.41 (Army regulations applying to "present" and "former DA personnel"). To overcome this expansive prohibition, anyone wishing to use "official information" in litigation must submit a so-called *Touhy* Request seeking permission

to do so. *See* 32 C.F.R. 725 *et seq.* (*Touhy* regulations for U.S. Navy)*; see also* 32 C.F.R. 516.40 *et seq*. (*Touhy* regulations for U.S. Army). As a Navy representative recently wrote in response to one of our many requests for help managing government information in this case, "Navy information cannot be disclosed, period, whether classified or unclassified, with or without a protective order, unless that disclosure is authorized in advance by the Navy."   Atteberry Decl., Ex. 1.

## III.    A-T Solutions Continues to Seek DOD Approval.

A-T Solutions has spent considerable time and effort in its attempt to secure advice from the military regarding the proper treatment of classified and official information relevant to this case. Early in the case, we informed the United States Navy that classified and other military information was implicated by the plaintiffs' claims and the appropriate defenses. *See* ECF No. 22-4 ("Simons Decl.") ¶¶ 4-7; ECF No. 44-2 ("Caslin Decl.") ¶¶ 4, 6.[3] At that time, the Navy confirmed that the information was classified and that the Navy would not authorize the disclosure of information related to the work performed by A-T Solutions. *Id.*

After repeated requests for guidance as to how to proceed, and who in the Navy would be managing the issues raised by the existence of the case (and thus should be communicated with about the case), the Navy stated that the matter was being sent up the chain of command and would be properly addressed in due course. We communicated several times with uniformed officers of the Navy's Judge Advocate General Corps. *See* Caslin Decl. ¶ 4. Eventually, the matter appears to have been transferred to the Navy's civilian Office of General Counsel in Washington D.C., which identified itself as the proper party to address the issue. Caslin Decl. ¶¶ 4, 6. The Navy admitted that the case presents complex challenges and offered to provide

---

[3]  The Simons Declaration has also been provided to the Court as Exhibit 8 to the Morrison Declaration. Rather than burden the Court with duplicate submissions, citations to the Caslin Declaration refer to the Declaration of Brent Caslin in Support of A-T Solutions, Inc.'s Renewed *Ex Parte* motion to Stay Case (ECF No. 44-2), which is scheduled to be heard on the same day as the present Motion.

guidance regarding the proper method of communicating with the Navy about the case. Unfortunately, despite repeated requests, the Navy did not deliver that guidance until very recently. *Id.* ¶ 10; Atteberry Decl., Ex. 1.

The Navy also had some difficulties deciding who within the Navy should manage the issues related to this case. After being transferred from the Uniform JAG Corp. to the civilian Office of General Counsel of the Navy, for example, A-T Solutions was instructed by a senior Navy representative to direct its requests for assistance to the contracting officer responsible for managing the government contract related to the plaintiffs' employment with A-T Solutions. Caslin Decl. ¶ 12. We were told that contracting officer would work with the company to seek declassification of the relevant information and work from there. A-T Solutions contacted the contracting officer, but that was also a dead end. We were then told to file a Freedom of Information Act ("FOIA") request for the information. *Id.* ¶ 13. That request, while apparently given in good faith, was an obviously faulty approach that caused us to re-engage the Navy's Office of General Counsel.

We continued to communicate with the several Navy contacts we had discussed the case with and were eventually informed that we had to "perfect" our several previous requests for information. Atteberry Decl., ¶ 2. The Navy instructed us to provide to it more information, including specific categories of information and documents relevant to the case, and the names of military personnel with information related to the case (among other things). *See id.*

A-T Solutions has since communicated further with the Navy in order to "perfect" its request for information related to the case. *Id.* ¶ 3; Ex. 1. We have every reason to believe our requests are now "perfected" and wholly in line with military procedures. *Id.* ¶¶ 4, 5. Indeed, with information received through the discovery process, we have formally requested access to all of the information we believe relevant to the case involving A-T Solutions, Blackwater, O'Gara, the U.S. Navy, the U.S. Army, and the plaintiffs. *See id.* Both the Navy and the Army should presently

be reviewing A-T Solutions's requests for permission to use in this litigation the official information identified in those requests.  We are not certain this path will work, where others have failed because they were not "perfect" according to military representatives, but we have continually sought to address and solve the problems caused by the need for A-T Solutions to use classified and other sensitive government information to defend itself in this case.

## IV.     The Plaintiffs Continue to Disregard the Sensitive Issues Raised by the Use of Classified and Official Information in this Case.

In some ways, we understand the plaintiffs' frustration that they are unable to press their purportedly simple employment claims to trial in an expedited manner.  But the plaintiffs themselves have for many years been fully aware that they operated within the military and then with civilian contractors in a highly classified and regulated environment.  They signed strict non-disclosure agreements governing classified and official government information.  *See, e.g.*, Morrison Decl., Ex. 25.  And they must understand that it would be inappropriate to discuss in a public forum the specifics of specialized training being delivered to U.S. Special Forces military personnel and EOD experts on the eve of deployment.

Nevertheless, the plaintiffs continue to ignore the complex evidentiary issues presented by this case.  Their present Motion asks the Court to review the classified information at issue *in camera* .  *See* ECF No. 43 at 10.   Although the Motion does not expressly say so, the requested *in camera* review would necessarily also be *ex parte* because the plaintiffs' counsel have not obtained the necessary security clearances.  It also asks the Court to order A-T Solutions to provide an offer of proof to both the Court and the plaintiff as to what each piece of evidence will show.  *See id*.  The Motion contains no legal authority supporting these requests.  Indeed, there is no legal authority specifically supporting the approach requested by the plaintiffs.

The present Motion is only the latest example of the plaintiffs' failure to appreciate the difficulties and complexities raised by the classified and official

information at issue in this case. On May 15, 2014, the plaintiffs filed a summary judgment motion that similarly attempted to test whether the evidence supported all the required elements of the learned professional and teacher exemptions. ECF No. 21. The Court denied the motion because A-T Solutions was "unable to present essential facts to justify its oppositions at this time due to classified information." ECF No. 26 at 3. The present Motion also requests, as alternative relief, permission to re-file the motion for summary judgment. *See* ECF No. 43 at 10. The plaintiffs' request wholly ignores that fact that, in the 12 weeks since this Court denied the motion for summary judgment, the Navy has not permitted A-T Solutions to use even one single piece of government information to defend this case. To the contrary, the Navy has communicated, among other things, that (1) information in the possession of A-T Solutions is classified (Simons Decl. ¶ 4); (2) federal law enforcement will be immediately dispatched if classified information is improperly disclosed by A-T Solutions in this case (Caslin Decl. ¶ 9); and (3) that the Navy will not permit any use of any official Navy information without Navy permission (Atteberry Decl., Ex. 1).

The plaintiffs appear to be seeking to take advantage of the unfair predicament in which A-T Solutions is, at least for now, stuck. The plaintiffs have sought orders compelling the production of classified information before the release of the information has been authorized by the DOD. *See* ECF Nos. 38, 47. The plaintiffs' Special Interrogatory No. 1, for example, requested that A-T Solutions produce contact information for certain witnesses. *See* ECF No. 38 at 3. A-T Solutions pointed out that some of the individuals were active duty military personnel and objected to producing the requested information on several grounds, including the fact that the plaintiffs have requested the contact information to interview the individuals about their work experiences, which will undoubtedly include classified or official information. *Id.* at 10-19. Similarly, the plaintiffs moved to compel responses to special interrogatories directly asking A-T Solutions to explain "classified information." *See* ECF No. 47 at 6-7. A-T Solutions objected to the requests,

pending the outcome of the government's review of this case. *Id.* at 20. It is impossible, without violating strict government secrecy laws (which carry heavy civil and criminal penalties), for A-T Solutions to comply with the plaintiffs' demands that classified and sensitive government information be produced in this case absent permission from and management by the government. A-T Solutions has been working to obtain that permission. To our knowledge, other than hound A-T Solutions, the plaintiffs have submitted no request to the government and made zero formal requests that information be disclosed for use in this case.

In each of the case activities identified above, the plaintiffs have demonstrated either a failure or an unwillingness to recognize the complex issues presented by the existence of official and classified information in this case. More broadly, however, the plaintiffs have completely failed to appreciate the extent to which the difficulties extend *beyond* classified information. The DOD regulations at issue here are not limited to confidential documents. Instead, they prohibit the use of all "official information" and apply to testimony from "present and former U.S. military personnel." 32 C.F.R. 97.3. Indeed, these regulations potentially affect every witness in this case, including the plaintiffs themselves and their own proposed witnesses. According to the plaintiffs' Amended Initial Disclosures, for example, they intend to call as witnesses a number of active duty and former military personnel. *See* Morrison Decl. Ex. 11. The plaintiffs should, therefore, be filing their own requests with the Navy to discuss Navy information, if they intend to ask any of these proposed witnesses about anything they learned "as part of their official duties or because of their official status within DOD or its components, while such personnel were employed by or on behalf of the DOD or on active duty with the United States Armed Forces." 32 C.F.R. 725.4. If Mr. Sleichter plans to discuss any aspect of his service in the Army, he must obtain permission from the Army before his first word. *See* 32 C.F.R. §516.41(a). The same is true for Mr. Halliwell and his service in the Marines. 32 C.F.R. 725.2. There has been no indication, however, that the plaintiffs have filed

any requests or have any intention of doing so. On the contrary, the plaintiffs' actions to date strongly suggest that they still do not recognize that this is even an issue for them. They simply claim, falsely, over and over again, that their claims should not be slowed down by any government regulations.

In the brief argument sections below, we explain why the plaintiffs' general approach, and the specific relief requested by their *in camera* review Motion, should be rejected by the Court in favor of a more careful, even if slow, approach.

## ARGUMENT

## I.    The Plaintiffs' Proposal Is Legally Impermissible.

"Navy information cannot be disclosed, period, whether classified or unclassified, with or without a protective order, unless that disclosure is authorized in advance by the Navy." Atteberry Decl., Ex. 1. That is a direct written statement from one of the Navy personnel we have been working with in an attempt to address the existence of official and classified information in this case. It is an accurate statement of the law.

The Department of Defense has set forth precise regulations for requesting authorization to disclose official information. *See* 32 C.F.R. 725 *et seq.* (Navy regulations); *see also* 32 C.F.R. 516 .40 *et seq.* (similar Army regulations). Pursuant to these regulations, A-T Solutions has sought the military's assistance and submitted requests to use information in this case. We began those communications many months ago. Recently, in response to communications from the Navy, we submitted "perfected" requests to both the Navy and the Army. Atteberry Decl. ¶¶ 4, 5.

The plaintiffs' proposal that the material be reviewed *in camera* is a clear attempt to circumvent these regulations. But *in camera* review does not remove the problem and is equally prohibited under the *Touhy* doctrine without prior approval from the Department of Defense. *See Gomez v. Gates (In re Boeh)*, 25 F.3d 761 (9th Cir. 1992) (interpreting the Department of Justice's *Touhy* regulations.) In *Gomez*, the plaintiff served a trial subpoena on an agent from the Federal Bureau of Investigation.

*Id.* at 763.  The Department of Justice prohibited the agent's testimony, however, under the *Touhy* doctrine.  *Id.*  Apparently frustrated, the district court ordered the witness to appear *in camera* and answer questions.  *Id.*  The order to appear *in camera* was overturned as violating the *Touhy* doctrine.  *Id.* at 767 ("The district court cannot confer authority on [the agent] to testify or reveal information *in camera* when the Attorney General has withdrawn that authority.").

Indeed, the *Touhy* regulations at issue in this case expressly direct the determining authority to consider "whether disclosure, *including release in camera*, is appropriate or necessary."  32 C.F.R. 725.8(a) (emphasis added).  In the face of these regulations, this Court cannot order *in camera* review of any military documents until the DOD has approved such a review.  *See Gomez*, 25 F.3d at 767.   The DOD itself will review the appropriateness of the information's disclosure, including any *in camera* review.  The Court is required to defer to the DOD process and decision regarding the disclosure, including *in camera* review, of this information.

The scope of these prohibitions is far-reaching.  But, once again, the plaintiffs apparently fail to recognize the implications of their request.  Conducting *in camera* examinations would inevitably put every single witness, *including the plaintiffs themselves*, in an untenable situation.  The Navy regulations prohibit active duty and former personnel from "provid[ing] such official information, testimony, or documents, [or] submit[ing] to[an] interview . . . without the authorization required by this part."  32 C.F.R. 725.2(b).   Similarly, Army regulations state that "present or former DA personnel will not disclose official information . . . in response to subpoenas, court orders, or requests."  32 C.F.R. 516.41(a).  While the requests for authorization have now been "perfected," neither the Navy nor the Army has provided any such authorization to date.  As a result, the witnesses are currently under orders from the U.S. military not to answer any questions that the Court may put to them in the course of an *in camera* review of classified information as suggested by the plaintiffs.

Opposition to Plaintiffs' Motion Requesting In Camera Review of Classified Evidence

Putting the witnesses in a situation where they have to choose between following the military directives and regulations or answering to the highly respected authority of the U.S. District Court would be unfair to them. It is particularly unfair because it is also unnecessary. The Navy and the Army are currently reviewing the information at issue and should decide in due course whether the information can be used or if intervention is necessary. The process has been slow and somewhat frustrating, but the plaintiffs' desire for immediate adjudication of their claims while A-T Solutions is unable to defend itself does not outweigh the legal necessity of a process that addresses the government's concerns regarding the protection of state secrets and has generally been approved by the U.S. Supreme Court.

Rather than grant the plaintiffs' hurried and ill-conceived request, the Court should deny the request, giving the parties and government ample time to resolve the issue using the slow but apparently appropriate regulatory process.

## II.   The Plaintiffs' Proposal Is Practically Unworkable.

The plaintiffs have requested that the Court review the classified material *in camera*. In addition to being legally prohibited, the proposal is entirely unworkable and further shows that the plaintiffs fundamentally misunderstand the issues raised by the classified and official information implicated in this case.

The classified documents at issue are stored in secure environments. The plaintiffs' proposal contains no suggestions as to how these documents might be removed from those facilities and delivered to the District Court. Removing the documents would violate federal law and likely is physically impossible. Making the appropriate arrangements would require input from and coordination with the U.S. military. The need for the military's involvement in making such arrangements is just one of the reasons that authorization from the military is required before official information may be disclosed in the context of litigation.

The plaintiffs' request also appears to be made on the assumption that the information at issue is entirely in documented form. *See*, *e.g.*, ECF No. 43-1 at 10

(requesting the Court to review "documents").  As A-T Solutions has repeatedly indicated, however, most of the evidence the plaintiffs are asking the Court to review is not in the form of documents, but would have to be elicited in testimony from multiple witnesses.  Any such examination would have to be conducted *ex parte* because the plaintiffs' attorneys do not have the necessary security clearances.  The most important witnesses to examine *ex parte* would be the plaintiffs Logan Halliwell and Aaron Sleichter.  To establish their professional military training, we plan to ask them details about that training.  We are entirely unable to ask those questions without permission from the U.S. Army (Mr. Sleichter) and the U.S. Navy (Mr. Halliwell).  Other A-T Solutions personnel would also discuss the details of the training provided by the company, as would active duty Navy personnel who oversee the training.  Much of this information is classified and all or nearly all of it is official.  We also would like to examine third parties regarding their knowledge of the elite training received by the plaintiffs — including their work for other defense contractors who support elite military training programs.  The limited evidence we have regarding these potential witnesses, from Blackwater and O'Gara, reveals that the plaintiffs' other work took place in similarly classified environments.  Morrison Decl., Exs. 25-27.  Given the sheer number of potential examinations necessary to satisfy the plaintiffs' demand that all undisclosed information be revealed now to the District Court, the process would easily take weeks.

Setting aside the simple fact that neither A-T Solutions nor any of the other parties identified above are permitted by law from discussing official or classified information, from a purely practical perspective, it would be a highly inefficient use of the Court's resources to conduct the requested examinations.  The unnecessary costs would not be limited to the Court, however.  The individuals that the Court would need to examine are located all across the country.  Requiring them to travel to the Court for an *in camera* examination would impose a significant burden, both in terms of money and time.  It would be much more efficient to delay the current discovery

schedule or stay the case, until the government has reviewed all necessary requests and worked through its processes to clear guidance.

In addition to the practical concerns identified above, other courts have made clear that *ex parte* communications such as those being proposed are highly disfavored. *See, e.g.*, *United States v. Earley*, 746 F.2d 412, 416 (8th Cir. 1984) ("The benign purpose does not insure against other tendencies for which ex parte communication are disfavored."). Among the concerns presented by the plaintiffs' proposal is the "danger that the trial judge may form an opinion as to the truth of the evidence before it may be answered and challenged." *Id.* (citing *Haller v. Robbins*, 409 F.2d 857, 859 (1st Cir. 1969)). Additionally, regardless of the outcome of any proposed *in camera* review, the individuals examined *ex parte* would still eventually be deposed in this case and then (to the extent they are within the subpoena power of this Court) called to testify at the trial of this matter. Without any benefit, the proposed examinations would add another layer of cost and burden on the witnesses, the Court, and the parties.

## III.     The Plaintiffs' Proposal Is Really An Improperly Disguised Motion for Reconsideration.

The plaintiffs' motion appears to be a thinly disguised attempt to have this Court reconsider the plaintiffs' motion for summary judgment. *See* ECF No. 21. In its summary judgment motion, the plaintiffs attempted to test whether the evidence supported each and every required element of the learned professional and teacher exemptions. *See id. passim*. The current Motion likewise asks A-T Solutions to present an "offer of proof as to exactly what each such document would establish relevant to Plaintiffs' status as exempt or non-exempt employees." ECF No. 43-1 at 10. Indeed, both motions are effectively asking the Court to make the same assessment of the evidence. Lest there be any doubt that the two motions are essentially the same, the plaintiffs conclude their most recent motion by suggesting that, in the alternative, the Court could just permit the plaintiffs "to refile their motion

for summary adjudication." *Id.* at 10.

The plaintiffs have not cited a single legal authority in their brief because there is no legal basis for their request. They appear to have filed this Motion, rather than a properly designated motion for reconsideration, to avoid the strict legal requirements for a reconsideration of the Court's prior ruling. First, Local Rules require motions for reconsideration to be within 28 days of the of the order being reconsidered. *See* Civ. L.R. 7.1(i)(2); *see also Killian v. Panetta*, No. 12-828, 2013 WL 4118399, at *1 n.2 (S.D. Cal. Aug. 13, 2013) (finding a motion filed after more than 28 days to be "untimely"). Moreover, a motion for reconsideration is "is not a license for a losing party's attorney to get a 'second bite at the apple.'" *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988). Indeed, a motion for reconsideration must set forth "what new or different facts and circumstances are claimed to exist which did not exist upon such prior application." Civ. L.R. 7-1(i)(1); *see also Gutierrez v. Givens*, 989 F. Supp. 1033, 1047 (S.D. Cal. 1998).

The summary judgment decision was made more 28 days ago. This delay alone renders the present Motion untimely. Moreover, the Court originally denied the motion for summary judgment because A-T Solutions was "unable to present essential facts to justify its oppositions at this time due to classified information." ECF No. 26 at 3. While A-T Solutions continues its efforts to resolve this problem, the same obstacle still remains: the government has not yet authorized the use of this information and the company is still several months later unable to present essential facts to justify its opposition. The issue is complex and the length of time it has taken to work with the government has been frustrating, but the simple fact remains that A-T Solutions is not yet able to defend itself in this case because it is restricted by federal law from discussing most of the facts in its possession related to the case.

Accordingly, the Motion should be denied, just as the summary judgment motion was denied by this Court.

//

## <u>CONCLUSION</u>

For the foregoing reasons, A-T Solutions respectfully requests that the Court deny the plaintiffs' request. With the goal of eventually addressing this case on its merits, the defense respectfully requests that the Court stay the case for a period of time or delay the current schedule by approximately one year to allow the defense to work through the restrictions being imposed by the military so A-T Solutions might receive permission to utilize the documents and testimony necessary for its defense.

Dated: August 25, 2014                    JENNER & BLOCK LLP


                                          /s/ Brent Caslin_____
                                          By: Brent Caslin

                                          Attorneys for A-T Solutions, Inc.